[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS TO DISMISS
On August 26, 1994, the Co-Operative Citizen's Monitoring Network, Inc. (CCMN) filed, pro se, an appeal from two decisions of the Department of Public Utility Control (DPUC). CCMN is a nonprofit volunteer organization engaged in monitoring environmental, health and safety issues affecting the citizens of Connecticut. The DPUC is a regulatory agency established under Title 16 of the General Statutes to regulate and supervise public service companies in this state. The decisions subject to the appeal are DPUC docket #92-04-15, entitled "DPUC Investigation in the Replacement of Two Steam Generators at Millstone Unit 2," and docket #92-11-11 entitled "Application of the Connecticut Light and Power Company to Amend its Rate Schedules."
On October 14, 1994, the DPUC filed a motion to dismiss the appeal. On October 25, 1994, the Connecticut Light and Power Company (CLP) filed a similar motion to dismiss. CLP is a public service company that provides electric utility services to Connecticut customers and is subject to regulation by the DPUC. On February 14, 1995, CCMN filed a memorandum in opposition to the defendant DPUC's motion to dismiss. On April 21, 1995, CCMN filed a supplemental memorandum entitled "Objections of Cooperative Citizens Monitoring Network to C.L. P. and D.P.U.C. Motions to Dismiss."
CCMN claims its right to file an appeal under the Uniform Administrative Procedures Act, General Statutes § 4-183. SeeBasilicato v. Dept. of Public Utility Control, 197 Conn. 320,322-23, 497 A.2d 48 (1985) (stating that "[t]he statutory authority for appeals from DPUC decisions rests in the provisions of General Statutes §§ 16-35 and 4-183."). The following facts and background material are taken from the plaintiff's appeal and CT Page 6185 the defendants' memoranda in support of the motions to dismiss.
In 1992, Millstone 2 was shut down for refueling and replacement of two steam generators. CLP owns 81% of the Millstone 2 nuclear power plant. In response to the shut down, the DPUC opened docket #92-04-15 to investigate the prudency of a steam generator replacement project.
On June 16, 1993, the DPUC rendered its decision on CLP's rate increase request in docket #92-11-11. That decision permitted a general rate increase for CLP, including a phase-in of CLP's portion of costs associated with the steam generator replacement. At that time, the DPUC acknowledged that the replacement costs for the steam generators were under review in docket #92-02-15 and stated that the rate increase approval would be subject to the outcome of that review.
On July 6, 1994, the DPUC rendered its decision in docket #92-04-15. The DPUC concluded that no evidence of imprudence existed on the part of CLP in regard to the failure of the original steam generators or the replacement project. The DPUC found no evidence to support a disallowance of costs and finalized the phase-in of the steam generator costs permitted in docket #92-11-11.
CCMN claims that a public hearing was required in docket #92-04-15, pursuant to General Statutes § 16-19(a). Secondly, CCMN claims that the DPUC violated General Statutes § 16-19e(d)[1] by failing to add certain parties to docket #92-04-15. CCMN contends that, since the new steam generators will be operational beyond the Millstone 2 license expiration date, the generators are capital investments. Thus, CCMN claims that the requirements of § 16-19e(d) should have been followed. Thirdly, CCMN appeals the decisions based on information in a 1994 Department of Energy report which allegedly impacts on the prudency of the steam generator replacement project. Finally, CCMN appeals the denial of CCMN's request for intervention status in docket #92-04-15.
The defendant CLP moves to dismiss the appeal for lack of subject matter jurisdiction. CLP claims that (1) CCMN lacks statutory authority to appeal the DPUC's July 6, 1994 decision in docket #92-04-15 because it was not a final decision in a contested case under General Statutes §§ 4-183(a) and 4-166(2); (2) CCMN failed to timely file its appeal of the decision CT Page 6186 in docket #92-11-11 as required by General Statutes § 4-183(a); (3) CCMN failed to allege and prove aggrievement as required by General Statutes § 4-183(a); and (4) Mary Ellen Marucci, coordinator of CCMN, lacks the legal authority to represent a corporate entity and therefore has failed to file a timely appeal pursuant to General Statutes § 4-183(a). The DPUC's motion to dismiss also asserts that the appeal was not filed in a timely manner because Marucci cannot represent a corporate entity and that CCMN has failed to prove or allege aggrievement. The DPUC makes the additional claim that CCMN failed to effect service of process in the manner prescribed by General Statutes § 4-183(c), thus depriving the court of subject matter jurisdiction over the appeal.
DISCUSSION
A motion to dismiss may be used to contest the court's subject matter jurisdiction. McCutcheon Burr, Inc. v. Berman,218 Conn. 512, 517, 590 A.2d 438 (1991) (granting of motion to dismiss on ground that court lacked subject matter jurisdiction upheld.). "[W]henever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Practice Book § 145.
1. CLP Argument that CCMN Cannot Appeal the DPUC Decision in Docket #92-04-15 Because it is Not a Final Decision in a Contested Case.
CLP claims that the court lacks subject matter jurisdiction because the DPUC's decision in docket #92-04-15 is not a final decision in a contested case within the meaning of the UAPA, which provisions create a right of appeal. CCMN argues that the decision in docket #92-04-15 is the final decision in which the Millstone 2 steam generator replacement costs were approved and is the decision in which docket #92-11-11 was finalized.
General Statutes § 16-35 states that any corporation aggrieved by a decision of the DPUC, in any matter to which it was or ought to have been made a party,[2] may appeal therefrom in accordance with the provisions of General Statutes § 4-183. Section 4-183(a) states in part that "[a] person who . . . is aggrieved by a final decision may appeal to the superior court as provided in this section." A "final decision" is defined as "the agency determination in a contested case." General Statutes CT Page 6187 § 4-166(3). A "contested case" is defined as "a proceeding, including but not restricted to rate-making, price-fixing and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held. . . ." General Statutes § 4-166(2).
CLP claims the DPUC investigation in docket #92-04-15 was conducted in accordance with the DPUC's general supervisory authority under General Statutes § 16-11.[3] CLP contends that there is no statutory requirement for a hearing in a prudency investigation proceeding such as the one conducted in docket #92-04-15. Consequently, CLP claims that docket #92-04-15 was not a final decision in a contested case within the meaning of § 4-183, and CCMN has no right of appeal.
CLP's argument is supported by Summit Hydropower Partnershipv. Commissioner of Environmental Protection, 226 Conn. 792,629 A.2d 367 (1993), wherein the court held that § 4-166(2) limits "contested case status to proceedings in which an agency is required by statute to provide an opportunity for a hearing to determine a party's legal rights or privileges." Id., 811. The court stated that "[i]f the plaintiff's rights or privileges were not statutorily required to be determined by the agency in a hearing or after an opportunity for a hearing, a `contested case' would not exist and the plaintiff would have no right to appeal pursuant to § 4-183(a)." Id., 802. The court also stated that to determine whether a statute requires an agency to hold a hearing, "we need to examine all the statutory provisions that govern the activities of the particular agency . . . in question." (Internal quotation marks omitted.) Id., 802-03.
CCMN claims that a public hearing was required in docket #92-04-15 under General Statutes § 16-19(a). That section states, in relevant part, that "[i]n the case of a proposed amendment to the rates of any public service company, the department shall hold a public hearing thereon . . . and shall make such investigation of such proposed amendment of rates as is necessary to determine whether such rates conform to the principles and guidelines set forth in section 16-19e, or are unreasonably discriminatory or more or less than just, reasonable and adequate, or that the service furnished by such company is inadequate to or in excess of public necessity and convenience. The department, if in its opinion such action appears necessary or suitable in the public interest may . . . make the aforesaid CT Page 6188 investigation of any such proposed amendment which does not involve an alteration of rates."[4]
"Appeals to courts from administrative agencies exist only under statutory authority." Basilicato v. Dept. of Public UtilityControl, supra, 197 Conn. 322. The language of § 16-19(a) requires a public hearing where there is a proposed rate amendment. Section 16-19(a) does not require the DPUC to conduct a hearing in prudency investigations, such as docket #92-04-15. Since the DPUC was not required by statute to provide an opportunity for a hearing in docket #92-04-15, that decision was not a "final decision in a contested case." Accordingly, CCMN does not have a right to appeal the decision under § 4-183
and the motion to dismiss the appeal is granted on this ground.
2. CLP Argument that CCMN Failed to Timely Appeal the DPUC's Decision in Docket #92-11-11.
CLP claims that CCMN's appeal of the DPUC's decision in docket #92-11-11, rendered on June 16, 1993, should be dismissed because it was filed after the statutory appeal period. CCMN appears to assert that the decision docket #92-11-11 was conditional on the decision in docket #92-04-15 and, therefore, the appeal period for #92-11-11 should run from the date the #92-04-15 decision was issued.[5]
General Statutes § 4-183(c) requires an appeal of an administrative proceeding to be filed within forty five days of the mailing of the agency decision.[6] The DPUC mailed its decision on June 18, 1993. (CLP Memorandum in Support of Motion to Dismiss, p. 12). CCMN filed its appeal of that decision on August 26, 1994, well beyond the statutory appeal period.
"The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it." (Internal quotation marks omitted.) Cassella v. Department ofLiquor Control, 30 Conn. App. 738, 740, 622 A.2d 1018 (1993), cert denied, 226 Conn. 909 (1993). Thus, CLP's motion to dismiss CCMN's complaint for lack of subject matter jurisdiction is granted.
3. CLP and DPUC's Argument that CCMN Failed to Establish Aggrievement. CT Page 6189
CLP and the DPUC contend that CCMN has not established the requisite aggrievement to vest the court with jurisdiction over the appeal. CCMN claims that it is aggrieved because members of CCMN have businesses which are affected by the replacement of the steam generators at Millstone 2. In addition, CCMN claims that Millstone 2 is owned by Northeast Utilities, who brokers its electric power to NEPOOL, from whom United Illuminating purchases power. Marucci allegedly resides in the United Illuminating franchise area and, by virtue of this connection with Millstone 2, claims to be aggrieved. CCMN's second amendment of appeal states that CCMN "is a nonprofit organization of ratepayers whose property and financial interests are directly affected by the actions of the defendant authority which are the subject of this appeal and, therefore, it is aggrieved."
"Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." New EnglandRehabilitation Hospital of Hartford, Inc. v. CHHC, 226 Conn. 105,120, 627 A.2d 1257 (1993). General Statutes § 4-183(a) provides that only a person "aggrieved by a final decision may appeal to the superior court." The motion to dismiss is the proper vehicle to test the sufficiency of the allegations of aggrievement. Levine v. Police Commission, 28 Conn. App. 344,355, 612 A.2d 787, cert. denied, 223 Conn. 923, 614 A.2d 923
(1992); Ribicoff v. Division of Public Utility Control,187 Conn. 247, 248, 445 A.2d 324 (1982). In the absence of aggrievement, the appeal must be dismissed for lack of subject matter jurisdiction. Connecticut Business Industry Assn., Inc.v. CHHC, 214 Conn. 726, 729-30, 573 A.2d 736 (1990).
The test for aggrievement is two-fold. "[F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Light Rigging Co. v. Dept. of Public Utility Control,219 Conn. 168, 173, 592 A.2d 386 (1991).
CLP asserts that CCMN has not met the first prong of the test because it has not demonstrated a legal interest in the subject matter of the appeal. CLP points out that the Office of Consumer CT Page 6190 Counsel was the entity appointed by statute to represent the public's interest in the DPUC decisions. CLP states that CCMN is not authorized to represent the interest of ratepayers generally. In addition, CLP claims that CCMN is not a CLP ratepayer and argues that ratepayer status alone would not be sufficient to distinguish CCMN's alleged interest from the general interest of other ratepayers. See Connecticut Business Industry Assn. v.Commission on Hospitals and Health Care, supra, 214 Conn. 730-31 (holding that the plaintiffs were not aggrieved because the fact that the plaintiffs were contractually obligated to pay rate increases set by CHHC did not give the plaintiffs greater interest than members of the general public who must pay the rates.).
CLP argues that even if CCMN can satisfy the first prong of the aggrievement test, it cannot satisfy the second. CLP asserts that since the DPUC was not required to hold a hearing in docket #92-04-15, the lack of a hearing does not result in a legal injury.[7] CLP likewise asserts that since it was not required to grant CCMN intervenor status in #92-04-15, the denial of intervenor status does not result in a legal injury.[8]
"Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact." New EnglandRehabilitation Hospital of Hartford v. CHHC, supra, 226 Conn. 120. CCMN has not established how its interest is distinguishable from the interest of the community as a whole, thus it has not met its burden of proving aggrievement. "In the absence of aggrievement, an administrative appeal must be dismissed for lack of subject matter jurisdiction." Id., 121. Even if the court found that CCMN met its burden of proving aggrievement, CCMN's appeal must be dismissed for the reasons stated in the other sections of this memorandum.
4. CLP and DPUC's Argument that a Non-Attorney May Not File an Appeal on Behalf of a Corporate Entity.
CLP and the DPUC argue that a corporation may not appear pro se or by an officer of the corporation who is not an attorney. CLP and the DPUC claim that because the appeal petition was filed by an officer of CCMN who is not an attorney, the appeal was never properly filed and the court does not have subject matter jurisdiction.[9]
"The authorization to appear pro se is limited to CT Page 6191 representing one's own cause, and does not permit individuals to appear pro se in a representative capacity. In Connecticut, a corporation may not appear pro se . . . A corporation may not appear by an officer of the corporation who is not an attorney." (Internal quotation marks omitted; citations omitted.) ExpresswayAssociates II v. Friendly Ice Cream Corp. of Connecticut,34 Conn. App. 543, 546, 642 A.2d 62 (1994); see also Woodward TinyTot Furniture v. Silver Rattle, 7 CSCR 849 (July 7, 1992, Shea, state trial referee); R.R. Donnelley Sons v. Grey Castle Press, Superior Court, judicial district of Litchfield, Docket No. 059244 (June 18, 1992, Pickett, J.); Emtec Engineering v.Administrator, Unemployment Compensation Act, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 034168S (February 21, 1991, Fuller, J.); General Statutes §51-88 (stating that "(a) A person who has not been admitted as an attorney under the provisions of 51-80 shall not: (1) Practice law or appear as an attorney-at-law for another . . . (d) The provisions of this section shall not be construed as prohibiting . . . (2) any person from practicing law or pleading at the bar of any court of this state in his own cause.").
The rule that a pro se party cannot represent a corporation establishes that Marucci does not have standing to bring this appeal. The rule also establishes that CCMN has not brought the appeal within the statutory time period. Accordingly, CLP and the DPUC's motions to dismiss are granted on this basis.
5. DPUC Argument that CCMN Failed to Properly Serve Process.
The DPUC claims that the appeal is fatally defective because it was not served on the DPUC in accordance with General Statutes § 4-183(c). Specifically, the DPUC claims that service was defective because the service lacked a summons and citation. The DPUC argues that the appeal neither directed a competent authority to summon the DPUC to appear nor did it contain notice of the return date.
CCMN claims that it made proper service by filing an Amendment of Appeal on September 21, 1994. The amended appeal specified a return day of September 13, 1994 and directed the defendant to appear at the "office of the Clerk, Superior Court, Judicial District of New Haven, 235 Street [sic], New Haven, Connecticut on or before the second day following said return day."[10]
CT Page 6192
Section 4-183(c) contains two alternative methods by which an administrative appeal may be served. "Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions."
It is well-settled that "no citation is required for service pursuant to § 4-183(c)(1)." Tolly v. Dept. of HumanResources, 225 Conn. 13, 19, 621 A.2d 719 (1993). Nonetheless, CCMN did not comply with the provisions of that section for service by certified or registered mail. Instead, CCMN faxed a copy of the appeal to a Jim Amspacher for hand delivery to the office of the Attorney General. Thus, the appeal was not served in accordance with § 4-183(c)(1).
Further, the appeal was not served in accordance with §4-183(c)(2) because it lacked a citation. "[S]ervice pursuant to § 4-183(c)(2) requires an authority competent to make service and, therefore, a citation. . . ." Tolly v. Dept. of HumanResources, supra, 225 Conn. 20. "[A] citation requires, not only a competent signing authority, but a command by that signing authority to a competent serving authority. . . ." Id., 20-21. "Without a citation signed by a competent authority, the officer to whom it is given for service receives no power or authority to execute its command, and becomes little more than a deliveryman." (Internal quotation marks omitted.) Peterson v. Hartford ZoningBoard of Appeals, Superior Court, judicial district of Hartford-New Britain at Hartford (February 28, 1994, Sullivan, J.).
Failure to provide and serve a writ of summons is a jurisdictional, not a circumstantial defect.[11] See Hillman v.Greenwich, 217 Conn. 520, 526-27, 587 A.2d 99 (1991) (on appeal, held that because a writ of summons is a jurisdictional prerequisite to the commencement of a civil action, the trial court should have dismissed the plaintiff's original complaint where it had no writ of summons attached to the complaint); see also Parks v. Department of Motor Vehicles, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705659 (February 22, 1995, O'Neill, J.) (holding that a lack of a writ of summons and a return day are not circumstantial errors and therefore granted motion to dismiss for lack of subject matter jurisdiction.). CT Page 6193
In the special circumstances of administrative appeals, defects in process deprive the court of subject matter jurisdiction. Bridgeport v. Debek, 210 Conn. 175, 179-80,554 A.2d 728 (1989).[12] "Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire jurisdiction." (Internal quotation marks omitted.)Grayson v. Wofsey, Rosen, Kweskin Zuriansky, 40 Conn. Sup. 1,2, 478 A.2d 629 (1984, Jacobson, J.).
CCMN did not properly serve the defendant under either §4-183(c)(1) or (2) and the DPUC's motion to dismiss for lack of subject matter jurisdiction is granted.
CONCLUSION
CLP's motion to dismiss CCMN's appeal of the DPUC's decision in docket #92-04-15 is granted because it is not a final decision in a contested case; CLP's motion to dismiss CCMN's appeal of the DPUC's decision in docket #92-11-11 is granted because CCMN failed to timely file its appeal; CLP's motion to dismiss CCMN's appeal of both DPUC decisions is granted because CCMN failed to establish aggrievement; and CLP's motion to dismiss both DPUC decisions is granted on the ground that a non-attorney may not file an appeal on behalf of a corporate entity.
DPUC's motion to dismiss CCMN's appeal of its decisions in docket #92-04-15 and #92-11-11 is granted on the grounds that CCMN failed to establish aggrievement; a non-attorney may not file an appeal on behalf of a corporate entity; and CCMN failed to properly effectuate service of process.
Robert A. Martin, Judge